CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
September 28, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Hannah Warren
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TAMMY K.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:25-cv-00054 |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | By: Elizabeth K. Dillon<br>Chief United States District Judge |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tammy K. (Tammy) brought this action for review of the final decision made by defendant, the Commissioner of Social Security (Commissioner), denying her application for supplemental security income. (Compl., Dkt. No. 1.) Pursuant to 28 U.S.C. § 636(b)(1)(B), the court referred the motion to U.S. Magistrate Judge C. Kailani Memmer for a report and recommendation (R&R). On January 28, 2026, Judge Memmer issued her R&R, finding that substantial evidence supported the Commissioner's final decision. (R&R, Dkt. No. 18.) Tammy timely objected (Objs. to R&R, Dkt. No. 19), the Commissioner responded (Resp. to Pl.'s Objs. to R&R, Dkt. No. 20), and Tammy replied (Reply, Dkt. No. 24). On March 27, 2026, the case was recommitted to Judge Memmer for consideration of Tammy's argument that the Administrative Law Judge (ALJ) failed to consider the nature of Stephen Thomas's (LPC Thomas)[2] treating relationship with Tammy in discounting his medical opinions. (Dkt. No. 25.) Thereafter, Judge Memmer issued her supplemental R&R on August 13, 2026, again

---

[1] Due to privacy concerns, the court is adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts only use the first name and last initial of the claimant in social security opinions.

[2] For consistency and clarity, the court adopts Judge Memmer's naming convention by referring to Mr. Thomas as LPC Thomas. (*See* R&R 4 & n.6.)

recommending affirmance of the Commissioner's decision. (Suppl. R&R, Dkt. No. 26.) Tammy timely objected to the supplemental R&R. (Objs. to Suppl. R&R, Dkt. No. 27.) The Commissioner did not respond.

After de novo review of the pertinent portions of the record, the R&R, the supplemental R&R, and the filings of the parties, in conjunction with the applicable law, the court agrees with Judge Memmer's recommendation. Accordingly, the court will overrule Tammy's objections, adopt Judge Memmer's R&R and supplemental R&R in full, deny Tammy's request for relief, and affirm the Commissioner's final decision.

## I. BACKGROUND

The court adopts the recitation of facts and procedural background as set forth in the R&R. (R&R 2–30.) Briefly, the ALJ determined that Tammy suffers from the following severe impairments: generalized anxiety disorder, panic disorder, major depressive disorder, post-traumatic stress disorder, degenerative disc disease, and obesity. (ALJ Decision 3, Dkt. No. 7-3.)[3] The ALJ concluded that these impairments or combination of impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 4.)

The ALJ proceeded to conclude that Tammy retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), except she

> can never climb ropes or scaffolds; can occasionally climb ladders, ramps, and stairs; can occasionally stoop, kneel, crouch, and crawl; cannot work around hazards such as exposed high places or unprotected moving mechanical parts; can understand, remember, and carry out simple instructions; can occasionally interact with coworkers and supervisors, but cannot perform group or tandem work, such as work where the claimant's ability to perform a task relies on another individual completing work, or paired work; cannot

[3] The ALJ Decision is located on pages 19–36 of Docket Number 7-3. The court uses the page numbers assigned by the ALJ when citing to his opinion.

> interact with the general public; can make simple work-related decisions; and can deal with occasional changes in a routine work setting.

(ALJ Decision 7.) The ALJ found that Tammy has no relevant work experience but determined that she could perform work that exists in significant numbers in the national economy such as garment sorter, night cleaner, or laundry folder. (*Id.* at 16–17.) Accordingly, the ALJ determined that Tammy was not disabled. (*Id.* at 17.)

On January 23, 2025, Tammy filed suit in this court to challenge the Commissioner's final decision. (*See* Compl.) By standing order and under authority granted in 28 U.S.C. § 636(b)(1)(B), the court referred the motion to Judge Memmer. After full briefing by both parties (*see* Dkt. Nos. 12–14), Judge Memmer issued her R&R, recommending that the court affirm the Commissioner's final decision that Tammy was not disabled, thus denying her application for supplemental security income (*see* R&R). Tammy timely objected (*see* Objs. to R&R), the Commissioner responded (*see* Resp. to Pl.'s Objs. to R&R), and Tammy replied (*see* Reply).

After reviewing the objections to the R&R, the court observed an argument apparently raised for the first time in Tammy's reply brief. (*See* Dkt. No. 25.) Accordingly, on March 27, 2026, the court issued an order recommitting the case to Judge Memmer for consideration of "the argument that the ALJ failed to consider the nature of LPC Thomas's treating relationship with Tammy in discounting [his] medical opinions." (*Id.*) On August 13, 2026, Judge Memmer issued her supplemental R&R, again recommending that the court affirm the Commissioner's final decision. (*See* Suppl. R&R.) Tammy timely objected. (*See* Objs. to Suppl. R&R.) The Commissioner did not respond. The matter is now ripe for review.

## II. LEGAL STANDARD

Reviewing courts "uphold a Social Security disability determination if (1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020) (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shelley C. v. Comm'r of SSA*, 61 F.4th 341, 353 (4th Cir. 2023) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). "In reviewing for substantial evidence, [the court does not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (quoting *Craig*, 76 F.3d at 589).

Even so, an "ALJ must adequately explain his reasoning" to allow the court to "engage in a meaningful review." *Woods v. Berryhill*, 888 F.3d 686, 692–93 (4th Cir. 2018), *superseded on other grounds as recognized in Rogers v. Kijakazi*, 62 F.4th 872 (4th Cir. 2023). "Indeed, [Fourth Circuit] precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citation omitted). Instead, "ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas*, 983 F.3d at 95 (citing *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). If the ALJ does so, and his or her decision is supported by substantial evidence and reached by applying the correct legal standards, the court must uphold the decision. *See id.* at 94; 42 U.S.C. § 405(g).

Where, as here, a matter has been referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1), the court reviews de novo the portions of the report to which a timely objection has been made. *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). "To trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *Id.* (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). Where the objecting party "objects only generally, the district court reviews the magistrate's recommendation for clear error only." *Id.* (citation omitted).

## III. DISCUSSION

Tammy objects to: (1) the findings regarding Tammy being off task (including excessive breaks) and missing too much work, particularly in reliance on Dr. Oritt's medical opinions; (2) the findings and conclusions regarding the ALJ's analysis of LPC Thomas's medical opinions; and (3) the finding that evidence other than objective medical evidence supported the ALJ's determinations.[4] (*See* Objs. to R&R.) Each objection is addressed in turn.

### A. The ALJ's Findings Regarding Being Off Task and Missing Too Much Work Were Supported by Substantial Evidence.

Tammy argues that the ALJ's determinations that Tammy would not be off task excessively, would not require too many breaks, and would not miss too many days of work are not supported by substantial evidence. (*Id.* at 1–2.) As the R&R properly observed, the ALJ

[4] Additionally, Tammy objects to the supplemental R&R on three grounds. (*See* Objs. to Suppl. R&R.) Because the supplemental R&R and Tammy's objections thereto are directly related to Tammy's second objection to the R&R, the court addresses Tammy's objections to the supplemental R&R with its discussion of LPC Thomas's medical opinions.

engaged carefully with at least four medical opinions in making this determination. (R&R 41–42.) The ALJ scrutinized each opinion for its consistency with the rest of the medical record, and he supported his particular findings of persuasiveness and unpersuasiveness with detailed citations to that record. (ALJ Decision 13–16.) He found none of the opinions wholly persuasive. (*Id.*) The R&R concluded that substantial evidence supported the ALJ's analysis. (R&R 41–42.)

Tammy particularly objects to the ALJ's treatment of Dr. Oritt's medical opinion. (Objs. to R&R 1–2.) She places importance on Dr. Oritt's opinion that Tammy was "able to persist in at least simple work tasks for the durational [sic] of normal workday/workweek with *no more than occasional interruption* from psych symptoms." (ALJ Decision 13 (emphasis added).) This "occasional" limitation, Tammy urges, should have led the ALJ to conclude, consistent with the vocational expert's (VE) testimony, that Tammy could not perform competitive work. (Objs. to R&R 2.)

But the ALJ's analysis of Dr. Oritt's opinion was typical of his careful approach to all the medical opinions. The ALJ noted that Dr. Oritt's opinion was consistent with Dr. Saxby's conclusions and "somewhat supported" by the evidence on which it relied, but the ALJ specifically found that

> the suggest [sic] restriction to "no more than occasional interruption from psych symptoms" was not adequately explained, and is inconsistent with other evidence in the file showing that the claimant generally had good attention/concentration during counseling encounters (e.g., 14F/8, 14F/24, 14F/30, 14F/40, 14F/52, 14F/62, 14F/86), and could be redirected during psychiatric encounters (e.g., 11F/34, 11F/55, 11F/99, 13F/3, 13F/11).

(ALJ Decision 14.) The court has reviewed these citations and finds that the ALJ was entitled to rely on them in declining to adopt Dr. Oritt's "occasional" limitation. And, contrary to Tammy's argument, there was nothing "implicit[]" about the ALJ's rejection of the limitation; he stated

what he found lacking in it quite explicitly. (Reply 1–2 (quoting *Ezzell v. Berryhill*, 688 F. App'x 199, 201 (4th Cir. 2017) (per curiam) (unpublished opinion)).) The ALJ was not required to consider the limitation further in determining whether Tammy could work competitively.

The R&R quotes Dr. Oritt's opinion, without noting that the ALJ found his "occasional" limitation unpersuasive, in a general summary of the ALJ's analysis of all the medical opinions. (R&R 41.) The essence of the R&R's summary is that reviewing courts owe deference to an ALJ's weighing of countervailing opinions. No particular significance is given to the "occasional" limitation in that summary. Accordingly, the editorial decision to not acknowledge the ALJ's finding that Dr. Oritt's "occasional" limitation was unpersuasive is insignificant to the R&R's ultimate conclusion that substantial evidence supported the ALJ's general analysis. Indeed, belaboring the point could only have tended to strengthen the R&R's ultimate approval of the ALJ's determination that Tammy would not be too off task to work competitively. In this context, the R&R's treatment of Dr. Oritt's opinion was altogether proper.

Tammy also includes a footnote challenging the ALJ's determination that she would not miss too many days of work. (Objs. to R&R 2 n.1.) But this is the same story: For satisfactory reasons, the ALJ found LPC Thomas's contrary medical opinion unpersuasive, as the R&R acknowledged and the court discusses further below. (ALJ Decision 14–15; R&R 36–38, 41.) Thus, the ALJ did not need to weigh Dr. Oritt's opinion further.

### B. The ALJ Applied the Correct Legal Standard in Assessing LPC Thomas's Medical Opinion and Substantial Evidence Supported Finding That LPC Thomas's Opinion Was Unpersuasive.

LPC Thomas's medical opinions portrayed Tammy's work prospects in an especially dim light, but the ALJ found them unpersuasive. (ALJ Decision 14–15.) The R&R found that the ALJ's conclusion was supported by substantial evidence (R&R 36–38), and the supplemental R&R opined that the ALJ applied the correct legal standards in reaching his conclusion (*see*

*generally* Suppl. R&R). Now, Tammy argues that the ALJ, the R&R, and the supplemental R&R applied the wrong legal standard and that the ALJ's decision to accord no weight to LPC Thomas's medical opinions was not supported by substantial evidence. (Objs. to R&R 3–6; Reply 2–6; Objs. to Suppl. R&R.)

**1. The ALJ applied the correct law.**

The court first addresses Tammy's argument regarding the legal standard. Tammy contends that the ALJ, the R&R, and the supplemental R&R failed to properly apply 20 C.F.R. § 416.920c. (Objs. to Suppl. R&R 1–2.) Tammy concedes that the regulation only requires ALJs to articulate in writing their findings as to the supportability and consistency factors. (*Id.*) She claims, however, that the ALJ in the present case failed to even consider the relationship with the claimant factor. (*Id.*)

For claims filed on or after March 27, 2017, ALJs no longer apply the so-called treating physician rule. *See* 20 C.F.R. § 416.920c(a) ("[ALJs] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."). Instead, ALJs are directed to articulate the "persuasiveness" of a medical opinion by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion." *Id.* § 416.920c(c). Because supportability and consistency are the "most important" factors, ALJs are only required to discuss how those factors were considered. *Id.* § 416.920c(b)(2). Indeed, as the Fourth Circuit has explained:

> [t]he ALJ only needs to say, for each "medical source" in the record, how each of the first two factors applies—that is, whether that source's conclusions are supportable by medical evidence and consistent with the rest of the record. An ALJ must consider all five factors, but need not discuss any save the first two unless those other factors are dispositive.

*Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 605 (4th Cir. 2025) (internal citations omitted).

That is precisely the legal standard applied by the ALJ—and recognized by the R&R and supplemental R&R—in this case. Tammy's conclusory allegation that "[t]he ALJ failed to consider these factors" does not convince the court that the correct legal standard was not applied. (Objs. to Suppl. R&R 2.)

**2. The ALJ's finding that LPC Thomas's medical opinions were unpersuasive was supported by substantial evidence.**

The relevant medical opinions are two identical forms that LPC Thomas filled out in July 2022 (R. 434–35)[5] and May 2024 (R. 1529–30) respectively. The medical opinion forms contain a grid of check-boxes, each indicating a patient's ability to perform certain work-related mental activities, such as "[r]emember work-like procedures" and "[c]arry out very short and simple instructions," that are required of unskilled workers. (R. 434–35; 1529–30.)

When LPC Thomas filled out the form in 2022, his responses indicated that Tammy was seriously limited but not precluded in her ability to perform many of the activities and was unable to meet competitive standards in only a few categories such as complete a workday and workweek without interruptions from psychologically based symptoms, respond appropriately to criticism from supervisors, and deal with normal stress. (R. 434–35.) LPC Thomas's narrative explanations on the form confirmed that, in his opinion, Tammy might not be able to endure a typical workplace without suffering anxiety and panic attacks. (*Id.*) Finally, in response to the question of how often he expected Tammy to be absent from work due to her impairments, LPC Thomas checked a box indicating that Tammy would miss "more than four days [of work] per month." (*Id.*)

[5] The record is comprised of ten parts located at Docket Numbers 7-1 through 7-10. Although the ALJ Decision cites the record using exhibit numbers, the court does not include citations to the individual exhibits. Instead, the court cites to the record as was done in the R&R and supplemental R&R.

When LPC Thomas filled out the same form in 2024, his outlook as to Tammy's ability to do work-related activities was bleaker. (R. 1529–30.) For sixteen of the twenty-five listed categories, LPC Thomas opined that Tammy either was unable to meet competitive standards or had no useful ability to function. (*Id.*) In the remaining nine categories, LPC Thomas considered Tammy either limited but satisfactory or seriously limited but not precluded in simple activities such as remembering work-like procedures; understanding, remembering, and carrying out simple or detailed instructions; and being aware of normal hazards and taking appropriate precautions. (*Id.*) In explaining his opinion, LPC Thomas noted that "[t]he simplest of criticisms will render her helpless, angry and/or suicidal. She has developed a diagnosis of social phobia, her anxiety goes up just thinking of leaving the house." (*Id.* at 1529.) Further, LPC Thomas explained that Tammy "tends to become depressed and unable to care for her house and children." (*Id.* at 1530.) LPC Thomas also noted that Tammy "rarely goes into the general public and when she does she has a great deal of anxiety. For instance if she goes to the store she will not go down an aisle with more than one person in the aisle." (*Id.*) According to LPC Thomas, Tammy "has a saying 'people are stupid'" and "she is constantly overwhelmed and can't be around people." (*Id.*) LPC Thomas again opined that Tammy would miss work more than four days per month. (*Id.*)

As the R&R observed, the ALJ gave LPC Thomas's opinions full consideration. (ALJ Decision 14–15; R&R 36–38, 41.) Indeed, the ALJ described the opinions at length and concluded the following:

> The opinions from Stephen C. Thomas, M.A., appear somewhat supported by the narrative discussion provided on each of the forms, which note the claimant's reports of high levels of anxiety around others, panic attacks, inability to handle criticism or stress, and inability to set realistic goals (6F, 15F). However, the claimant's self-reported symptoms and limitations noted in these explanations are not entirely consistent with the claimant's reports to providers as

> documented in outpatient treatment records. For instance, the statements that the claimant is "unable to care for her house and children" and "can't be around people" (15F/2) are inconsistent with treatment notes showing that the claimant reported caring for her children and other caretaking activities as previously discussed (e.g., 3F/32, 3F/38, 4F/10, 4F/18, 4F/26, 11F/106, 13F/3, 14F/8). At one point in early 2023, the claimant's psychiatric provider noted that the claimant was unloading groceries and also addressing her children when needed during the conversation. She was calm and was able to maintain mood during the interruptions (11F/55). Treatment notes from the spring of 2024 reflect that the claimant was helping to care for an older relative, contrary to the provider's suggestion that the claimant could not deal with any level of work stress (13F/3, 13F/10, 14F/80). Mental status examinations around that time continued to show findings similar to prior encounters (e.g., 13F/11, 14F/86). For instance, the claimant's psychiatric provider noted coherent and normal rate speech, logical though tangential at times thought process, intact associations, no psychosis or delusions, no suicidal or homicidal ideation, intact attention/concentration, normal alertness and orientation, broad and full range affect, euthymic mood, intact recent/remote memory, good fund of knowledge, and coherent language (13F/11). Overall, the claimant's statements as to the severity of the symptoms are not entirely consistent with her reported activities and clinical presentation during encounters as discussed in this decision. Accordingly, the opinions from Stephen C. Thomas, M.A., are not persuasive.

(ALJ Decision 14–15.) In other words, the ALJ discredited LPC Thomas's opinions because he found some portions of them to be inconsistent with other pieces of caretaking and psychiatric evidence in the record.

The R&R described the ALJ's review of LPC Thomas's opinions as "comprehensive[]" and found that the ALJ properly "explained LPC Thomas' medical opinions were neither supported nor consistent with the other evidence." (R&R 37.) It also found that the ALJ "did not engage in cherry picking" and "built a logical bridge between the evidence and his conclusion." (*Id.* at 38.) Finally, the R&R found that "the ALJ's persuasiveness finding about LPC Thomas' medical opinions is supported by substantial evidence because a reasonable mind might accept

the ALJ's cited evidence as sufficient to support his conclusion, and the ALJ cited more than a mere scintilla of evidence." (*Id.*)

Tammy objects to this portion of the R&R. She argues that because the ALJ only addressed the portions of LPC Thomas's opinion regarding her ability to be a caretaker and be around other people, failing to grapple with the remainder of LPC Thomas's opinions, a finding that the ALJ's analysis was supported by substantial evidence is improper. (Objs. to R&R 3–4.) Additionally, Tammy contends that the ALJ erred in finding that LPC Thomas's opinions regarding Tammy's ability to be a caretaker and be around people were inconsistent with the other record evidence. (*Id.* at 5–6.)

The court agrees with the R&R's conclusion that substantial evidence supported the ALJ's refusal to credit LPC Thomas's medical opinions. Tammy's argument seems to be that the ALJ was required to detail his findings on the persuasiveness of *each* opinion and explanation expressed by LPC Thomas on the forms completed in 2022 and 2024. (*Id.* at 3–4; Reply 3–5.) The ALJ was not required to do so. Indeed, as concisely explained in the supplemental R&R:

> Recognizing the volume of evidence ALJs must review, the regulation permits ALJs to engage in "source-level articulation." 20 C.F.R. § 416.920c(b)(1). In application this means that when a medical source provides multiple opinions, the ALJ is permitted to review them together—"[ALJs] are not required to articulate how [they] considered each medical opinion . . . from one medical source individually." *Id.*

(Suppl. R&R 4 n.4.) Applied here, the ALJ properly considered the medical opinions of LPC Thomas collectively, selecting a few representative opinions to explain how they were unpersuasive when considered with the record as a whole. (ALJ Decision 14–15.) This, the R&R properly recognized, satisfied the substantial-evidence standard. (R&R 37–38.)

Tammy's contrary arguments are unavailing. (Objs. to R&R 3–6; Reply 2–6.) LPC Thomas's statements that Tammy was unable to take care of her children or be around people

were representative enough of his whole opinions and relevant enough to Tammy's work abilities that the ALJ was entitled to find that their inconsistency with the record rendered the whole of LPC Thomas's opinions unpersuasive. The court has reviewed the opinions of LPC Thomas highlighted by the ALJ as well as the contradictory record evidence. The court finds that the ALJ's analysis was satisfactory.

And the ALJ's discussion cannot fairly be read to "consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." *Woods*, 888 F.3d at 694. The ALJ did not simply conclude that Tammy could perform competitive work because she could take care of and be around other people sometimes. Rather, he discounted the persuasiveness of LPC Thomas's opinions for their record inconsistency regarding the extent to which Tammy could perform these tasks. (ALJ Decision. 9–10.) Further, his ultimate conclusions adequately accounted for the extent of Tammy's abilities insofar as the credited record supported its limitations. (*Id.* at 7.) Finally, the ALJ did not confine his inconsistency discussion to other evidence of Tammy's ability to caretake and be around others in the record but also found LPC Thomas's opinions inconsistent with more general psychiatric evidence. (*Id.* at 15.) In light of this substantial evidence, the court is constrained to reject Tammy's characterization that the ALJ "reframe[d], selectively and inaccurately quote[d], and ignore[d] explanations provided by a medical source." (Objs. to R&R 6; Reply 6.)

Tammy also objects to the ALJ's failure to mention that LPC Thomas's opinions were rendered after often-weekly, often-one-on-one therapy sessions with Tammy that began in January 2021 and were memorialized in the record. (R&R 4–12; R. 286–321, 1323–68, 1441–1528.) Despite this treating relationship, the ALJ found LPC Thomas's opinions wholly unpersuasive while according at least some persuasiveness to the opinions of consultants who never met Tammy or met her only once. (ALJ Decision 14–15.)

As discussed *infra*, the treating physician rule no longer applies. Tammy acknowledges this. (*See, e.g.*, Objs. to Suppl. R&R 3.) Yet Tammy urges that "the regulations still favor 'the medical opinion of a source who has examined the claimant; a source who has treated the claimant; and a specialist in the relevant area of the medicine." (*Id.* (citing *Arakas*, 983 F.3d at 110).) Although the "greater weight" language has been removed and the language of the factors has been updated, Tammy contends that the "general point remains accurate." (*Id.*)

Not so. Although a medical source's relationship with the claimant is *a factor* which ALJs must consider under 20 C.F.R. § 416.920c(c), the regulation expressly disclaims the notion that any medical opinion will be favored over others. *See* 20 C.F.R. § 419.620c(a) ("[ALJs] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources."). To the extent that the regulation favors any particular medical sources over others, it is those that express an opinion supported by and consistent with the other record evidence that are favored. *Id.* § 419.620c(b)(2) ("The factors of supportability . . . and consistency . . . are the most important factors [ALJs] consider when [they] determine how persuasive [they] find a medical source's medical opinions . . . to be."). The applicable regulation takes away any presumption of persuasiveness accorded to medical sources that have a significant treating relationship with the claimant and instead directs ALJs to treat all medical sources the same: by considering the Section 419.620c(c) factors and giving the most weight to a source's supportability and consistency with the record. The fact that the ALJ did not mention the treatment history between LPC Thomas and Tammy does not convince the court that it was not considered nor does it change the court's conclusion that there was substantial evidence to support the ALJ's ultimate conclusion that LPC Thomas's medical opinions were wholly unpersuasive.

### C. The ALJ's Findings Were Substantially Supported by Evidence Other Than, and Did Not Impermissibly Rely Upon, Objective Medical Evidence.

Tammy's application relied on a spectrum of evidence, including her testimony of her subjective experience and the records of her various medical providers, like LPC Thomas. Tammy now argues that the ALJ impermissibly discounted her evidence for want of support by objective medical evidence. (Objs. to R&R 7–10; Reply 6–7.)

In evaluating a claimant's subjective statements about medical conditions like Tammy's, which do not reliably produce objective medical evidence, an ALJ "may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount" the claimant's statements. *Arakas*, 983 F.3d at 97–98; *accord Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 361–62. "Objective medical evidence" includes clinically observable signs and laboratory findings. *See, e.g.*, 20 C.F.R. § 416.929(c)(2). It does not include other information from medical sources or third-party observations. *Id.* § 416.929(c)(3).

The R&R found that substantial evidence supported the ALJ's handling of Tammy's subjective allegations, that the ALJ did not cherry-pick evidence, and that the ALJ "did not reject Tammy's subjective allegations based on the absence of objective medical evidence. (R&R 38–39.) Instead, it concluded that "the ALJ compared Tammy's subjective allegations in her testimony and function reports against her subjective allegations in her statements to her healthcare providers." (*Id.* at 39.) The court agrees.

The ALJ fairly weighed Tammy's subjective complaints and their record support, and built the limitations they credibly indicated into his conclusions. (ALJ Decision 9–10.) He then dedicated pages of analysis to how other record evidence was inconsistent with some of Tammy's complaints. (*Id.* at 10–12.) This included "the overall conservative treatment of the symptoms and [Tammy's] reports about the symptoms as noted by her own providers" and years of

outpatient treatment notes of overall mental stability, even taking account of "isolated emergency room visits," some suicidal ideation, and other fluctuating symptoms. (*Id.* at 10–11.) The ALJ also discussed the inconsistency of Tammy's complaints with her "overall objective presentation during encounters" and found that "the objective findings point to a lesser degree of severity than generally suggested at the hearing." (*Id.* at 11–12.) He supported this with more than a dozen record citations to Tammy's "observed mental status as documented by her providers." (*Id.*)

The R&R correctly concludes that the ALJ's discussion was supported by substantial—rather than cherry-picked—evidence. (R&R 38–39.) The ALJ identified a pattern of moderate inconsistencies amid a mixed record and, while consistently acknowledging countervailing evidence, determined that it was enough to discredit some of Tammy's complaints. Tammy objects that many of these inconsistencies—some of which were perfunctory box-checks—were of limited analytical value or were not as inconsistent as the ALJ found, but the court has compared them with the record and finds that, as a whole, they amounted to substantial evidence. (Objs. to R&R 7–9; Reply 6–7.) The ALJ never said that Tammy had more good days than bad. He only found that she had more good moments than some portions of her complaints would have suggested and adjusted their credibility accordingly. He adequately noted the bad days. And although much of this properly drew on the observations of Tammy's medical providers, it neither relied on nor effectively required Tammy to adduce the narrow category of "objective medical evidence." *See* 20 C.F.R. § 416.902(k); *Shelley C.*, 61 F.4th at 361–62. The ALJ did not disbelieve Tammy because the symptoms she described had not been clinically observed, but because other evidence partially discredited her accounts of them. The ALJ's conclusions as to Tammy's subjective statements were supported by "more than a mere scintilla" of evidence, therefore, the substantial-evidence standard is met. *Drumgold*, 144 F.4th at 604.

## IV. CONCLUSION AND ORDER

Having considered Tammy's objections de novo, the court finds that the ALJ's decision was legally sufficient and supported by substantial evidence. Accordingly, it is hereby ORDERED as follows:

1. The R&R (Dkt. No. 18) is ADOPTED in full;
2. The supplemental R&R (Dkt. No. 26) is ADOPTED in full;
3. Tammy's objections (Dkt. No. 19) are OVERRULED;
4. Tammy's supplemental objections (Dkt. No. 27) are OVERRULED; and
5. The Commissioner's decision is AFFIRMED.

A consistent judgment order will be entered.

Entered: September 25, 2026.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge